UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SHAUN BROWN

           Petitioner,

v.

                                  Civil No. 2:21cv377
                                  Criminal No. 2:17cr169

UNITED STATES OF AMERICA,

           Respondent.

## OPINION AND ORDER

This matter is before the Court on a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence," filed by Shaun Brown ("Petitioner"). ECF No. 142. For the reasons set forth below, Petitioner's § 2255 motion is **DISMISSED AND DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

From April 2012 through June of 2013, Petitioner fraudulently operated a Virginia nonprofit corporation that was responsible for providing meals to low-income children over the summer school recess. ECF No. 127 ¶¶ 7, 16-17. The Summer Food Service Program ("SFSP"), which Petitioner defrauded, is funded by the United States Department of Agriculture ("USDA") and is administered by the Virginia Department of Health ("VDH") and "sponsor" corporations, including Petitioner's non-profit corporation. Id. ¶¶ 7-12. While participating in the SFSP during the summer of 2012, Petitioner falsified paperwork by inflating the number of

meals her non-profit had provided to children, resulting in substantial overpayments of SFSP funds. Id. ¶¶ 16-18, 33-35.

Despite this conduct, which occurred primarily during 2012, by the end of the summer of 2017 Petitioner had not been indicted. It is undisputed that the federal felony charges that were ultimately pursued against Petitioner are governed by a 5-year statute of limitation. 18 U.S.C. § 3282(a). Based on the dates of Petitioner's illegal acts, which included causing fraudulent SFSP payments to be transmitted by interstate wire, the Government needed to secure an indictment by mid-October of 2017 or risk losing the ability to timely bring certain felony charges against Petitioner. ECF No. 10 ¶¶ 10-11.

No later than September of 2017, the Government was aware of the limitations clock and had informed Petitioner, through her counsel at that time, that a federal grand jury was investigating her in connection with allegations of wire fraud, mail fraud, and theft of government property. ECF No. 83. After consultation with her lawyers, on September 15, 2017, Petitioner and her lawyers signed a two-page written document titled "extension of the statute of limitations" (hereinafter, "the waiver"). Id. In essence, Petitioner agreed to a short-term (3 month) extension of the limitations period. Id. at 1. The signed waiver expressly describes why the defense temporarily waived a limitations defense:

> Desiring that an indictment against Shaun Brown not be
> immediately returned so that she may discuss these
> matters with her attorneys and the United States
> Attorney's Office for the Eastern District of Virginia;
> Shaun Brown hereby agrees to extend the five year statute
> of limitations with regard to any indictable violation
> in connection with the above-referenced matters . . .
> should these charges be brought against Shaun Brown
> . . . prior to January 25, 2018 . . . .

ECF No. 83, at 1-2.

On December 20, 2017, well within the extended limitations period, a federal grand jury returned an indictment charging Petitioner with two counts of Wire Fraud and one count of Theft of Government Property. ECF No. 1. The following day, a new defense attorney entered an appearance on behalf of Petitioner,[1] ECF No. 5, and Petitioner was later placed on bond, ECF No. 7. On May 10, 2018, the grand jury returned a superseding indictment adding one additional count: Count One - Conspiracy to Commit Wire Fraud and Causing False Records.[2] ECF No. 10. The conspiracies charged in Count One were alleged to have continued through "at least in or about June 2013," as evidenced by Petitioner's May 30, 2013, appeal of a VDH decision denying her application to participate in the SFSP program during the summer of 2013.[3] Id. ¶¶ 8, 24.

---

[1] For ease of reference, counsel who signed the waiver will be called "former counsel," counsel retained for trial will be called "trial counsel," and counsel that filed the § 2255 motion will be called "habeas counsel."

[2] Counts One through Three of the original indictment were renumbered as Counts Two through Four of the superseding indictment.

[3] To provide context for this allegation, Petitioner's participation in the 2011 SFSP resulted in a USDA "overpayment" that she was required to repay in 2012. At trial, the Government presented evidence that Petitioner

In late July of 2018, Petitioner proceeded to a trial by jury, which ended in a mistrial based on the jury's inability to reach a unanimous verdict. ECF No. 38. A second jury trial was conducted in late October of 2018, and at the conclusion of the second trial, the jury returned a unanimous finding of guilt as to all four counts.[4] ECF No. 87. In fact, the verdict form split out the two conspiracies charged in Count One, and the jury found Petitioner guilty as to both "Conspiracy to Commit Wire Fraud" and "Conspiracy to Cause False Records." Id. Either finding was legally sufficient to support a conviction as to Count One.

In March of 2019, Petitioner was sentenced to three years' imprisonment followed by three years of supervised release. ECF No. 118. Petitioner was also ordered to pay approximately $80,000 in restitution to the "USDA/Food and Nutrition Service." ECF No. 109. Petitioner appealed to the Fourth Circuit, and in July of 2020 the Fourth Circuit affirmed this Court's judgment. United States v. Brown, 820 F. App'x 191, 198 (4th Cir. 2020). Petitioner thereafter filed her § 2255 motion in this Court, with the assistance of counsel, and after motions practice, briefing

---

improperly used "new [2012] federal funds to pay back" the old 2011 federal debt. Trial Tr. 210-11. After defrauding the SFSP in 2012 and again being required to repay federal funds that Petitioner did not have, the Government asserts that Petitioner's ongoing efforts to participate in the 2013 SFSP were a continuation of the scheme to defraud and misuse SFSP funds.

[4] The undersigned judge did not preside over either of Petitioner's trials.

extensions, and case reassignments among judges of this Court, her motion is ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner in custody may collaterally attack her sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain relief, a petitioner must prove by a preponderance of the evidence that: (1) her sentence or conviction was "imposed in violation of the Constitution or laws of the United States"; (2) the district court "was without jurisdiction to impose such sentence"; (3) the sentence exceeds "the maximum authorized by law"; or (4) the sentence or conviction is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). A § 2255 motion is, in essence, a statutory federal habeas corpus action that enables a petitioner to collaterally attack her sentence or conviction through the filing of a new proceeding, in contrast to a direct appeal. See Jones v. Zych, 812 F. App'x 115, 119 (4th Cir. 2020).

The right to pursue a collateral attack does not displace a direct appeal as the ordinary method for challenging a conviction or sentencing determination, so the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal. See United States v. McKinney, 60 F.4th 188, 193 (4th Cir. 2023).

Accordingly, with limited exceptions, a petitioner advancing claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). The "higher hurdle" applies because, once a petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 165-66.

For this reason, a district court is generally prevented from reaching the merits of a defaulted § 2255 claim unless a petitioner can show two things: (1) "cause" excusing the failure to directly appeal the alleged errors; and (2) "actual prejudice resulting from the errors." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). Alternatively, a petitioner may overcome default by demonstrating "actual innocence by clear and convincing evidence." Id. at 493.

The above procedural default rules do not apply to freestanding claims alleging ineffective assistance of counsel. Rather, ineffective assistance claims are properly asserted for the first time in a § 2255 motion. Massaro v. United States, 538 U.S. 500, 504 (2003). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that counsel's performance was so deficient that it "fell below an objective standard of reasonableness"; and (2) that counsel's inadequate performance prejudiced the petitioner. Strickland v.

Washington, 466 U.S. 668, 687-88 (1984).   Conclusory statements are insufficient to carry a petitioner's burden to demonstrate ineffective assistance.   See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000))).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential" Strickland, 466 U.S. at 689; see also Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard).   Satisfying the first prong of Strickland requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   Strickland, 466 U.S. at 687.   Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'"   Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690).   As it is too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689.

Under the second prong of <u>Strickland</u>, a petitioner must "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

### III. DISCUSSION

#### A. Jurisdictional Claims

Petitioner's first group of claims purport to challenge this Court's jurisdiction over her criminal case. More specifically Petitioner argues that jurisdiction is lacking because: (1) there was no offense against the United States or any agency thereof; (2) there was no theft of U.S. Government property; and (3) the indictment is not part of the record. ECF No. 142, at 2-5.

In response, the Government argues that each of these claims are procedurally defaulted because they challenge the sufficiency of the trial evidence/record and thus could have been, but were not, raised on direct appeal. ECF No. 159, at 8-9; <u>see</u> <u>McKinney</u>, 60 F.4th at 193 ("[T]he procedural-default doctrine precludes a defendant from asserting [a] claim on collateral review" if it was

not first presented "during h[er] initial criminal proceeding or on direct appeal."). Though Petitioner attempts to counter by highlighting that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived," United States v. Cotton, 535 U.S. 625, 630 (2002), Petitioner does not identify a true subject-matter jurisdiction dispute. Rather, Petitioner challenges the sufficiency of the evidence of her guilt, including whether the record demonstrates that she defrauded the United States or an agency thereof. See United States v. Carr, 271 F.3d 172, 178 (4th Cir. 2001) ("Carr next contends that because the interstate commerce element is 'jurisdictional,' the federal courts lack subject matter jurisdiction over his case if [such] element was not proven. This part of the . . . claim . . . must fail, however, because the 'jurisdictional element' is merely one element of the criminal activity proscribed by [18 U.S.C.] § 844(i), and whether it is demonstrated in an individual circumstance does not affect a court's constitutional or statutory power to adjudicate a case.") (quotation marks omitted); United States v. Ratigan, 351 F.3d 957, 962-63 (9th Cir. 2003) ("In every federal criminal prosecution, subject-matter jurisdiction is conferred by 18 U.S.C. § 3231[,]" and defects in the so-called "jurisdictional element" of a federal crime, such as a bank's "federally-insured" status, do "not present a pure question of the court's subject-matter jurisdiction," but

rather, "go to the merits of the case."). Importantly, both the original and superseding indictments in this case allege that the United States Department of Agriculture funds the SFSP and that Petitioner both defrauded and stole money from the SFSP.[5] For the reasons outlined in Carr and Ratigan, it is clear that Petitioner's purported "jurisdictional" challenges, including whether the indictment was timely filed in the record, are actually challenges to the sufficiency of the indictment, record, or trial evidence, and because these claims were not raised at an earlier time, they are procedurally defaulted. See Cotton, 535 U.S. at 630 ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case.").[6]

Having found that Petitioner's claims are defaulted, the Court next considers whether Petitioner has demonstrated "cause and prejudice" for failing to previously raise such claims or, alternatively, factual innocence. In short, Petitioner's § 2255 motion offers no argument seeking to overcome her default, and thus fails to demonstrate that either avenue for avoiding default

---

[5] The superseding indictment, the charging document ultimately at issue, further defines the USDA as "a department and agency of the United States," ECF No. 10 ¶ 1.

[6] Habeas counsel's citation to the Fourth Circuit's earlier opinion in Cotton for the proposition that omissions in an indictment are "jurisdictional" is troubling, at the least, as the Supreme Court expressly reversed the Fourth Circuit's cited-to holding. See ECF No. 165, at 2 (citing United States v. Cotton, 261 F.3d 397, 404 (4th Cir. 2001), rev'd, 535 U.S. 625 (2002)).

is applicable.   Accordingly, Petitioner's "jurisdictional" claims are **DISMISSED** as procedurally defaulted.

Alternatively, even if these claims were not defaulted, they would be denied on the merits.   Petitioner fails to demonstrate that the indictments (or trial evidence) were insufficient to charge (or prove) an offense against the United States.   To the contrary, a review of portions of the trial transcript and relevant authorities undermines Petitioner's claims. <u>See</u> Trial Tr. 89[7] (explaining that the SFSP is "funded by the federal government through the United States Department of Agriculture, or USDA"); <u>United States v. Brown</u>, 820 F. App'x 191, 193 (4th Cir. 2020) ("The Summer Food Service Program (SFSP) is a United States Department of Agriculture (USDA) initiative . . . [and] SFSP is <u>administered</u> by state agencies, which <u>funnel grants from USDA</u> to nonprofit service institutions.") (emphasis added); <u>cf.</u> 7 C.F.R. § 225.6(a) (discussing certain <u>federal</u> criminal penalties for willfully misapplying, or obtaining by fraud, any funds or assets under specified school lunch or child nutrition acts if the funds were received "directly or indirectly" from the USDA).[8] Similarly, with both the original and superseding indictment filed on the public docket, ECF Nos. 1, 10, Petitioner's contention that she is

---

[7] The consecutively paginated trial transcript for Petitioner's second trial is available at ECF Nos. 92-97.

[8] Petitioner's hindsight challenge to the interstate nature of the fraudulent wires is likewise belied by the record.   ECF No. 79; Trial Tr. 613-18.

entitled to § 2255 relief because the superseding indictment is not "in the record" is flatly rejected. ECF No. 142, at 5. Accordingly, even assuming that Petitioner's "jurisdictional" claims are procedurally proper, they are **DENIED** on the merits.

## B. Limitations Arguments

Petitioner's second group of claims assert that the original indictment charges crimes occurring outside the statute of limitations, and that the superseding indictment does not "relate back" to the original indictment because it substantially broadens the charges, most notably by adding a conspiracy count. ECF No. 142, at 5-9. The Government again argues that these claims are procedurally defaulted, and that they alternatively fail on the merits. ECF No. 159, at 11-12. Petitioner's reply brief focuses on the merits of her claims. ECF No. 165, at 2-12.

### 1. Default of Challenges to both Indictments

Consistent with the Government's argument, the Court finds that Petitioner's § 2255 claims challenging the timeliness of both the original and superseding indictments are procedurally defaulted. See United States v. Williams, 684 F.2d 296, 299 (4th Cir. 1982) ("The statute of limitations set forth in 18 U.S.C. § 3282 is not jurisdictional. It is an affirmative defense . . . ."); United States v. Toland, No. 08-20548, 2020 WL 7260535, at *2 (E.D. Mich. Dec. 10, 2020) ("By not raising them on direct appeal, Defendant procedurally defaulted his Fifth Amendment and

statute of limitations claims."). Petitioner did not advance a limitations challenge on direct appeal, and Petitioner's § 2255 reply brief, filed with the assistance of counsel, fails to effectively address her default or demonstrate actual innocence.[9] Petitioner's challenge to the timeliness of both the indictment and superseding indictment are therefore **DISMISSED**.

### 2. Merits of Challenge to Original Indictment

Alternatively, even if Petitioner's limitations challenges were procedurally proper, her challenge to the original indictment lacks merit. Petitioner argues that the original indictment, dated December 20, 2017, was returned after the expiration of the five-year limitations period because the latest alleged dates of unlawful activity are October 12, 2012 (Count One), November 15, 2012 (Count Two) and November 2012 (Count Three). Were this the end of the story, Petitioner's claim could have merit. However, as previously discussed, on September 15, 2017, Petitioner and her former counsel signed the limitations waiver. ECF No. 83. This written agreement was signed approximately one month prior to the

---

[9] Petitioner's reply brief does include a single sentence asserting that she "has alleged" that counsel's deficient performance was the cause for her failure to previously raise a limitations challenge. ECF No. 165, at 3. First, it does not appear that Petitioner "has alleged" this in her § 2255 filings; second, Petitioner never addresses the performance of appellate counsel nor explains why an appellate challenge to the timeliness of the indictment(s) was "clearly stronger" than claims that were raised on direct appeal, Smith v. Robbins, 528 U.S. 259, 288 (2000); and third, as explained in greater detail below, Petitioner fails to demonstrate "actual prejudice" sufficient to excuse her default as she offers no valid basis to challenge the timeliness of the indictment or superseding indictment.

expiration of the earliest limitations period (October 12, 2017), and the original indictment was returned within the timeframe contemplated by the agreement. ECF No. 1. Because Petitioner's § 2255 motion fails to offer a viable challenge to the waiver, her limitations challenge is alternatively **DENIED** on the merits.[10]

### 3. Merits of Challenge to Superseding Indictment

Petitioner's challenge to the timeliness of the <u>superseding</u> indictment likewise fails on the merits. As explained by the Fourth Circuit, "a superseding indictment which supplants a timely-filed indictment, still pending, is itself to be regarded as timely . . . so long as it neither materially broadens nor substantially amends the charges against the defendant." <u>United States v. Ojedokun</u>, 16 F.4th 1091, 1109 (4th Cir. 2021) (omission in original) (quoting <u>United States v. O'Bryant</u>, 998 F.2d 21, 23

---

[10] Though this Court need not, and does not, take up new arguments raised by habeas counsel for the first time in a reply brief, <u>Clawson v. FedEx Ground Package Sys., Inc.</u>, 451 F. Supp. 2d 731, 734 (D. Md. 2006), even if the Court considered the late advanced reply-brief arguments grounded in contract law, they would be denied. First, Petitioner fails to demonstrate that a voluntarily and counseled limitations extension requires court approval, with the lone case cited for such proposition failing to support it. Second, Petitioner fails to demonstrate that the Government "waived" its ability to rely on the limitations waiver when it agreed to enter the document as a stipulation rather than a trial exhibit. ECF No. 165, at 4. Petitioner's argument on this issue is perplexing because the sidebar exchange <u>quoted by Petitioner</u> wholly undercuts any suggestion that the Government "waived" reliance on the document. <u>Id.</u> at 3-4 (quoting Trial Tr. 625). Third, Petitioner's contention that the waiver fails for lack of consideration is belied by the face of the document, which states that Petitioner secured the benefit of deferring indictment so that "discussions" with federal prosecutors could continue. ECF No. 83; <u>cf.</u> ECF No. 159-1 (reporting, albeit based on hearsay, that former defense counsel were "trying to negotiate with the government" and wanted to "gain more time"). Finally, Petitioner's citation to the "parole evidence rule" and arguments about contract modification fail to undermine the validity of the waiver.

(1st Cir. 1993)). When determining whether new allegations materially broaden or substantially amend a prior indictment, the court should consider whether a charge in the superseding indictment alleges the violation of a different statute, requires proof of different elements, relies on different evidence, or exposes the defendant to a greater sentence, though "[n]o factor alone is dispositive."[11] Id. Ultimately, "the 'touchstone' of the analysis is whether the original indictment fairly alerted the defendant to the subsequent charges" such that it can be fairly said that the defendant received "timely notice" that they would be "called to account for their activities and should prepare a defense." Id. at 1109-10 (quotation marks omitted).

Applying this standard to the instant case, Counts Two through Four of the superseding indictment relate back to Counts One through Three of the original indictment. Notably, these counts virtually mirror the original allegations, thus providing not only adequate "notice," but a strong chain of continuity between the original and amended charges. Specifically, Counts Two and Three charge the same crime (wire fraud), under the same statute, with the same punishment, and allege the exact same fraudulent wire

---

[11] To the extent that Petitioner's filings suggest that "the superseding indictment must relate back fully or not at all," Petitioner offers "no case that supports this principle," and such position is "untenable in light of the policy reasons underlying statutes of limitations and the relation-back principle." United States v. Lowry, 409 F. Supp. 2d 732, 739 (W.D. Va. 2006). Rather than an applying an all-or-nothing approach, the proper way to evaluate a superseding indictment requires a count-by-count comparison. Id. (citing United States v. Ross, 77 F.3d 1525, 1537 (7th Cir. 1996)).

transfers, in the exact same dollar amounts, transmitted on the exact same days, as charged in the original indictment. The difference between the indictments, as argued by Petitioner, is that the revised counts incorporate by cross-reference the new conspiracy allegations charged in Count One.[12] Petitioner, however, fails to demonstrate that new background allegations presented by cross-reference materially broaden or substantially amend the <u>substantive wire fraud crimes</u> charged in Counts Two and Three. Similarly, other than the new cross-reference to the conspiracy count, the text of Count Four of the superseding indictment is identical to the text of Count Three in the original indictment, and thus relates back.[13]

As to the new conspiracy allegations in Count One, these expanded allegations charging a new crime with numerous newly added factual details do not "relate back" to any charge in the original indictment. However, the face of the superseding indictment,

---

[12] Though not expressly argued by Petitioner, <u>the introduction</u> to the two wire fraud counts was also changed in the superseding indictment to state that the fraudulent scheme extended through June of 2013 (rather than December of 2012). However, because no new fraudulent wires are alleged, the modification to the introduction does not "materially broaden" the wire fraud crimes. Illustrating this point, Petitioner expressly argues that the limitations analysis should not turn on the listed, but unsupported, end-date of the fraudulent scheme, but is instead governed by the date the last wire <u>was transmitted</u> – November 15, 2012. ECF No. 142, at 5-6.

[13] The Court rejects Petitioner's unsupported assertion that Count Three of the original indictment was fatally flawed, and later impermissibly broadened, because the <u>United States</u> Department of Agriculture is not expressly defined as an "agency of the United States" until the superseding indictment. ECF No. 142, at 8.

returned on May 10, 2018, charges a conspiracy that extends through June of 2013, including an overt act occurring on May 30, 2013. ECF No. 10 ¶¶ 9, 24.   Because Count One alleges a conspiracy continuing into the limitations period, Petitioner's challenge to the timeliness of Count One (even if not defaulted) would fail on the merits.

In summary, Petitioner's direct challenges to the timeliness of the indictments are **DISMISSED** as procedurally defaulted. Alternatively, to the extent these claims are procedurally proper, they are **DENIED** on the merits.

### C. Ineffective Assistance

Petitioner's third group of claims asserts that her trial counsel provided ineffective assistance.   Unlike the above, these claims are procedurally proper, Massaro, 538 U.S. at 504, and they are analyzed under the familiar standard outlined in Strickland.

### 1. Failure to Challenge the Limitations Extension

Petitioner first asserts that trial counsel performed deficiently by not challenging the authenticity or enforceability of the signed limitations waiver, as purportedly illustrated by a sidebar exchange during her second trial that was prompted by defense counsel's objection to the waiver being presented to the jury.   ECF No. 142, at 10-11.   During the sidebar, the Court suggested, and counsel for both sides agreed, that the written waiver be signed as a stipulation and entered on the public docket,

but not be admitted as a trial exhibit.   Trial Tr. 625-26.
Petitioner's § 2255 motion contends that defense counsel's
agreement with the Court's suggestion revealed that he "checked
out and gave the reins of defense to the Court."   ECF No. 142, at
10.   However, in reality, the Court offered a compromise that
satisfied a request by the defense that the details of the
limitations waiver not be litigated before the jury.   As discussed
below, this request was a strategic decision made by trial counsel
to avoid former counsel being called by the Government as trial
witnesses.   Thus, Petitioner's allegation of constitutionally
deficient performance is rejected.

Petitioner seems to next argue that trial counsel was
deficient for failing to even consider a limitations defense.   See
id. at 11 ("[D]efense counsel gave no thought to the Statute of
Limitations and without explanation declared he would not do so
even if the government opened the door.").   This argument, however,
suggests a misunderstanding of both the legal issue and the factual
background that prompted trial counsel's sidebar comments.

As to the legal issue, the Government did not need to "open
the door" to allow defense counsel to challenge the enforceability
of the waiver — a limitations defense was always available.
However, while this defense was legally "available," nothing in
the record suggests that trial counsel had a colorable basis to
challenge the validity of the waiver.   To the contrary, even at

this late stage in the proceedings, Petitioner's § 2255 motion fails to identify a valid basis to challenge the waiver's enforceability.[14]   Without identifying a colorable basis to challenge the document, Petitioner's suggestion that trial counsel was <u>constitutionally</u> deficient for accepting its validity fails.

As to the background facts that prompted trial counsel's sidebar comments, defense counsel filed a pre-trial "Motion to Quash" seeking to prevent the Government from calling Petitioner's former attorneys as trial witnesses.   ECF No. 72.   Consistent with such strategy, trial counsel largely conceded the validity of the signed waiver.   <u>Id.</u>   As reflected in the transcript, on the first day of trial, outside the presence of the jury, counsel and the Court discussed the Government's intention to call Petitioner's former attorneys and the defense's pretrial efforts to quash their subpoenas based on the attorney-client privilege.   Trial Tr. 6-7. The trial judge asked whether the defense was pursuing a "speedy trial" claim (an apparent reference to a limitations defense) and trial counsel confirmed that they were <u>not</u> pursuing such defense. <u>Id.</u>   The Government, however, clarified that even without such issue in play, Petitioner's former attorneys would be called as

---

[14] For example, habeas counsel has not provided an affidavit from Petitioner asserting that she did not voluntarily sign the waiver agreement.   Habeas counsel's characterization of the waiver as an "alleged agreement" that was "allegedly" signed by Petitioner improperly seeks to inject doubt into the document's validity without providing any <u>evidentiary basis</u> for challenging the authenticity or voluntariness of Petitioner's signature.   ECF No. 165, at 3.

rebuttal witnesses <u>if the defense</u> opened the door at trial by advancing the theory that Petitioner's prosecution was "racially or politically motivated."[15]  <u>Id.</u> at 7-8.

With that background, defense counsel's objection to the introduction of the waiver as an exhibit, comments about opening the door, and stipulation to the waiver being filed on the record reveal his constitutional effectiveness as he was taking the necessary steps to ensure that the Government was not permitted to call Petitioner's former counsel as trial witnesses.[16] Petitioner's hindsight assertion that trial counsel followed the Court's proposed handling of the waiver "without any consideration to its form and substance" is belied by the record, as trial counsel was familiar with this document from the first trial, filed a pretrial motion to quash associated with it, and strategically elected not to challenge it because the Government was prepared to support it with testimony from two of Petitioner's former lawyers.

---

[15] Petitioner testified in her first trial that she was unaware of the federal criminal investigation until December of 2017 and that she was indicted <u>after</u> she filed a civil lawsuit in December of 2017. ECF No. 50, at 889.    However, testimony from Petitioner's former lawyers would purportedly have eliminated any inference that the timing of the original indictment was retaliatory because they would confirm that negotiations with federal prosecutors over potential criminal charges were ongoing for several months <u>before</u> the waiver was signed and long before Petitioner filed her lawsuit.   Trial Tr. 7.

[16] Trial counsel also made reference during the sidebar to a pre-trial motion to exclude, which was a Government motion seeking to exclude defense evidence of vindictive prosecution.   Trial Tr. 3; ECF No. 54.   Though the Court's denial of this motion <u>allowed</u> the defense to admit evidence of vindictive prosecution, the Government's readiness to counter this evidence with testimony from former counsel supported trial counsel's strategic decision to avoid opening the door.

See Morrow v. Harkleroad, 258 F. Supp. 2d 418, 422 (W.D.N.C. 2003) ("Where there is a 'conceivable strategic advantage to the decision not to introduce certain evidence, that choice is virtually unassailable on collateral review.'" (quoting Rose v. Lee, 252 F.3d 676, 692-93 (4th Cir. 2001))); Bacon v. Lee, 225 F.3d 470, 481 (4th Cir. 2000) (indicating that the court "review[s] counsel's judgments not for what is 'prudent or appropriate, but only what is constitutionally compelled.'" (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984)). Petitioner therefore fails to satisfy Strickland's first prong.

Separately, the Court rejects Petitioner's prejudice assertion contending that Petitioner "would not have been convicted" if trial counsel had performed differently. ECF No. 142, at 11. As explained above, Petitioner offers no valid basis to challenge the enforceability of the written waiver or the timeliness of either indictment, and because Petitioner's collateral attack overlooks a key strategic issue and merely speculates that the written waiver was invalid, Petitioner fails to demonstrate Strickland prejudice.

### 2. Failure to Challenge Timeliness of Wire Fraud Charges

Petitioner next asserts that trial counsel performed deficiently by not raising a limitations or jurisdictional challenge to the wire fraud counts. ECF No. 142, at 11-13. Within such argument, Petitioner both contends that there is no evidence

in the record that any interstate wires were sent during the limitations period, and again invokes her challenge to the limitations waiver by arguing that the dates Petitioner submitted SFSP claims, as well as the wires that followed, all occurred more than five years before the original indictment was filed.   Id.

First, to the extent Petitioner suggests that trial counsel should have made a jurisdictional challenge to the wire fraud counts due to timing of the wires or the absence of the "interstate" element, such position relies on a faulty interpretation of the law.   Neither a limitations issue nor a failure of proof on the interstate element are jurisdictional defects.   Williams, 684 at 299; Carr, 271 F.3d at 178.   Second, to the extent Petitioner claims that the record lacks evidence of an interstate transfer, this assertion is summarily rejected as the interstate element is clearly evidenced by a written stipulation, as further supported by trial testimony.   ECF No. 79; Trial Tr. 613-18.[17]   Third, to the extent Petitioner asserts that trial counsel was deficient for failing to advance a limitations challenge based on the dates of Petitioner's "requests" for payment in August and September of 2012, the Government's wire fraud claims rely on the fraudulent interstate payments in October and November that were transmitted in response to Petitioner's earlier

---

[17] Petitioner's § 2255 motion seeks to sow doubt about the interstate nature of the wire transfers; however, Petitioner fails to advance any evidence suggesting that trial counsel had a good faith basis to contest this element.

requests.   Trial Tr. 617-18; see 18 U.S.C. § 1343 (criminalizing fraud that "causes" an interstate wire "to be transmitted").   Based on the written waiver signed in September of 2017, which Petitioner fails to undermine, Petitioner does not identify a colorable basis to challenge the timeliness of the original indictment as to these wire payments.   In sum, Petitioner's § 2255 motion fails to offer any argument as to the wire fraud counts that establish either constitutionally deficient performance or resulting prejudice.

### 3. Failure to Challenge Jury Charges - Various Claims

Petitioner's third subclaim advances a variety of arguments asserting that trial counsel provided ineffective assistance with respect to multiple jury instructions.   The Court endeavors to address each argument in turn.

First, Petitioner contends that trial counsel should have challenged the fact that the jury instructions did not require the Government to "prove every element of the offenses."   ECF No. 142, at 14.   In support, Petitioner argues that a clarifying jury instruction given by the Court regarding the conspiracy charged in Count One of the superseding indictment was improper.   The clarifying instruction listed the legal elements of the two different offenses that Petitioner purportedly conspired to commit (wire fraud and causing false documents), and then stated that: "As I explained to you before, however, the government need not prove that the defendant committed each of these underlying acts

23

to prove that the defendant conspired to participate in wire fraud or causing false documents." ECF No. 142, at 14 (quoting Trial Tr. at 939). Petitioner's assertion that trial counsel erred by not challenging this portion of the instruction in rejected because: (1) Petitioner fails to acknowledge that another jury instruction both listed all of the essential elements of the conspiracy charged in Count One and indicated that the Government must prove those elements beyond a reasonable doubt, Trial Tr. 850-55; and (2) though it was necessary for the jury to consider the elements of the two substantive crimes listed in the conspiracy count (wire fraud and causing false documents), the elements of these underlying crimes were not "elements" of the conspiracy count as Petitioner could be found guilty of conspiring to commit a listed substantive crime even if that crime was never completed. Trial Tr. at 937-39. Accordingly, Petitioner fails to demonstrate either constitutionally deficient performance, or resulting prejudice, based on her trial counsel's failure to argue that the quoted portion of the clarifying instruction was a misstatement of the law - in simple terms, it was not.

Second, while phrased as court error, Petitioner next appears to argue that counsel was ineffective for failing to object to the Court's failure to instruct the jury on the statutory language found in 18 U.S.C. § 371 (conspiracy) or 18 U.S.C. § 1343 (wire fraud). Petitioner contends that this left the jury without an

instruction that there must be both a "basic intent to agree" and the "more traditional intent to effectuate the object of the conspiracy." ECF No. 142, at 15. This ineffective assistance claim is summarily rejected as the Court not only instructed the jury on both of these statutes, Trial Tr. at 852-53, but explained that the jury must find that the trial evidence proved, beyond a reasonable doubt, that: (1) "the conspiracy agreement or understanding . . . was formed"; (2) "the defendant knew the purpose of the agreement"; (3) "with knowledge of the purpose . . . the defendant then deliberately joined the conspiracy . . . "; and (4) "at some point during the conspiracy . . . one of its alleged members knowingly performed one of the overt acts charged in the superseding indictment and did so in order to further or advance the purpose of the agreement," id. at 854. The requirement that the Government prove an overt act furthering the goals of the conspiracy was actually repeated a second time immediately after these four elements, and "overt act" was then defined for the jury. Id. at 854-55. Additionally, the Government's closing argument acknowledged that the Government must prove at least "one act in furtherance of the conspiracy." Id. at 893. Petitioner's claim therefore fails to satisfy either prong of Strickland.[18]

---

[18] Though not raised by Petitioner in this portion of the § 2255 motion, and not referenced in her reply brief, the Court's clarifying instruction recapped the conspiracy elements without making reference to the overt act requirement. Trial Tr. 938. Although this statement was an incomplete summary of the conspiracy elements previously disclosed to the jury, § 2255

Third, though again claiming court error without reference to counsel's performance, Petitioner presumably contends that her lawyer was deficient for failing to challenge a jury instruction indicating that jurors should use their "good sense" to decide the case in light of their "common knowledge of the natural tendencies and inclinations of human beings." ECF No. 142, at 15-16 (citing Trial Tr. 939). Petitioner suggests that this instruction in an effort to define a conspiracy and was not effective at addressing the scope and duration of the conspiracy and omitted the overt act requirement. Id. Contrary to this assertion, it appears from the transcript that this statement of the law is the beginning of a separate "closing instruction" that, among other things, instructs the jury to confine themselves to the trial evidence, avoid viewing any verdict as a "win or loss" for the government, put the issue of punishment out of their minds, and to deliberate as a group, though still ensuring that each individual juror does not surrender

---

relief is not warranted for multiple reasons: (1) Petitioner, proceeding with the assistance of counsel, did not advance this claim in her § 2255 motion as a basis for finding ineffective assistance and the Government has not had an opportunity to respond to it; (2) even if raised, the jury instructions, when read as a whole, effectively inform the jury that an overt act is an element that must be proven by the Government, a requirement that was further emphasized by the Government during its closing argument — thus, trial counsel's failure to object to the subsequent incomplete summary of the elements did not rise to a <u>constitutional</u> deficiency; and (3) the Government proved the completed substantive crime of wire fraud beyond a reasonable doubt (which obviously required overt acts), and the Fourth Circuit characterized the evidence of conspiracy to defraud the SFSP through submitting false records as "overwhelming," <u>Brown</u>, 820 F. App'x at 198, meaning that Petitioner cannot demonstrate that the one-time omission of the overt act requirement from the clarifying instruction resulted in <u>Strickland</u> prejudice.

any honest conviction.  Trial Tr. at 939-40.  Petitioner fails to demonstrate that a valid objection could have been mounted to this closing instruction, and separately fails to demonstrate resulting prejudice.  Accordingly, like the preceding claims, this subclaim is denied on the merits.[19]

Fourth, Petitioner argues that "the error is harmful," citing to a Fourth Circuit opinion holding that, in the context of that case, it was error for the district court to fail to instruct the jury that it had to find that an overt act was committed during the limitations period.  ECF No. 142, at 15 (citing United States v. Head, 641 F.2d 174, 176 (4th Cir. 1981)).  Petitioner does not offer additional argument on this point in her motion or reply brief, with the exception of the following statement: "Moreover, absent the indictment in the reporter's record/trial exhibits, the Jury could not have known the horse had already left the barn (statute of limitation literally ran prior prosecution)."  Id.

Beginning with this final statement, the instant Opinion has repeatedly addressed and rejected Petitioner's claim that the statute of limitations expired before prosecution, expressly finding instead that both indictments were timely.  To the extent

_____

[19] This section of Petitioner's brief purportedly advances five arguments (four alleging error, one addressing prejudice), but the argument labeled as "third" is a single sentence indicating that there are "two cases suggesting error" and then providing a citation to those two cases (one of which is the Fourth Circuit's opinion in the instant criminal case).  ECF No. 142, at 15.  It is unclear to the Court how these citations "suggest" error, and this undeveloped one-sentence subclaim is rejected.

Petitioner offers the one-sentence argument quoting from Head for the proposition that counsel's identified errors were "harmful," this conclusory claim is rejected because Petitioner fails to articulate why a reasonable jury would have acquitted her on Count One had counsel not made the errors alleged in this section of her § 2255 brief (failure to challenge: the clarifying instruction, the lack of instructions on § 371 and § 1343, and the closing instruction).[20]

---

[20] Even if this cursory claim, phrased as "the error is harmful," can be interpreted as presenting an entirely new challenge to trial counsel's performance, it would fail because, as presented, Petitioner's § 2255 motion does not establish constitutionally deficient performance. Notably, the only count for which a limitations defense was even colorable was Count One, and nothing in the record suggests that it was constitutionally unsound for the defense to singularly focus on proving Petitioner not guilty of all charges rather than separately invoking a partial limitations defense that could (at best) shield Petitioner as to a single count. Strategically, trial counsel had good reason to be concerned that raising a limitations defense could open the door to adverse testimony from former counsel. Moreover, even accepting that the district judge would have ruled that a narrow "overt act" limitations challenge could avoid this testimony, advancing that defense could have: (1) distracted the jury's focus from the complete defense being offered and possibly undermined that defense's credibility by asking the jury to acquit Petitioner on a legal technicality; or (2) caused the Government to introduce more robust inculpatory evidence regarding events occurring in March through June of 2013. Presumably taking into account the harm to his client's status in the community that any felony conviction would bring (Petitioner had no prior record and previously had run for U.S. Congress), as well as the minute chance that a technical acquittal on Count One would result in a shorter term of imprisonment, see ECF No. 118, at 2; ECF No. 127 ¶ 49, advancing only a "complete" defense falls within the wide range of professionally competent assistance. Finally, even if the Court assumes that defense counsel overlooked the ability to thread the needle by raising an overt act challenge that avoided opening the door to former counsel's testimony, Petitioner has not demonstrated that such mistake was an error of constitutional proportions when considered in the context of the well-orchestrated defense in this case (a defense that resulted in a hung jury at the first trial). Separately, the Court is doubtful that Petitioner could establish Strickland prejudice had this claim been developed because the record does not suggest that the same jury that found Petitioner guilty of Counts Two through Four would have rejected the Government's theory that the conspiracy continued through May or June of 2013. As discussed in footnote 3, the Government introduced

### 4. Failure to Challenge Jury Charges - Amended Indictment

In an independent subsection of Petitioner's ineffective assistance argument, Petitioner contends that trial counsel should have objected to the Court's "constructive amendment" to the superseding indictment. ECF No. 142, at 16. Petitioner asserts that the Court improperly amended the superseding indictment by omitting the overt act requirement from the "clarifying" conspiracy instruction. The cited portion of the instruction read by the Court stated: "All that you must find is that there was an agreement to commit either of those offenses [(wire fraud or causing false documents)] and that a defendant voluntarily joined the conspiracy." ECF No. 142, at 16 (quoting Trial Tr. 938).

As discussed in a footnote to the preceding section of this Opinion, this "clarifying" instruction erroneously omitted the overt act requirement; however, Petitioner incorrectly contends that "the district court failed to instruct the jury on the element of the overt act." Id. at 17. To the contrary, as previously reviewed, the jury instruction that defined the elements for Count One twice stated that the jury must find an overt act beyond a reasonable doubt, and the Government again reviewed this requirement during its closing argument. Trial Tr. 854-55, 893.

---

evidence at trial that Petitioner's effort to secure approval to participate in the 2013 SFSP was an overt act in furtherance of the conspiracy because, consistent with her improper use of 2012 SFSP funds to pay back her 2011 USDA debt, Petitioner was seeking access to hundreds of thousands of dollars of 2013 SFSP program funds in the face of owing a sizeable 2012 USDA debt.

Accordingly, the Court must address whether the lone inconsistent reference constituted a "constructive amendment" in the face of repeated proper statements of the overt act element.

Considering the proof necessary to establish a constructive amendment, "it is the broadening of the bases for the defendant's conviction that is important" and the "key inquiry is whether the defendant has been tried on charges other than those made in the indictment against h[er]." United States v. Allmendinger, 706 F.3d 330, 339 (4th Cir. 2013) (cleaned up). As explained by the Fourth Circuit:

> [W]hen a constructive amendment claim rests on allegedly erroneous jury instructions, a reviewing court is to consider the totality of the circumstances — including not only the instructions and the indictment but also the arguments of the parties and the evidence presented at trial — to determine whether a jury could have "reasonably interpreted" the challenged instructions as "license to convict" on an unindicted charge. If not — if a reasonable jury, in light of the full context, would not have thought that it was permitted to convict on a ground not included in the indictment — then no constructive amendment has occurred.

United States v. Moore, 810 F.3d 932, 936 (4th Cir. 2016) (citation omitted).[21]

Here, Petitioner does not adequately allege that she was convicted of a "different" crime than charged by the grand jury, but instead highlights an incomplete recap of the elements that

---

[21] A constructive amendment violates a defendant's Fifth Amendment right to be indicted by a grand jury because the "fatal variance" results in the defendant being convicted of a different crime than that charged by the grand jury. Moore, 810 F.3d at 936.

must be proven to establish a § 371 conspiracy.  However, the proper elements of such a conspiracy were previously provided to the jury in a detailed instruction defining what was necessary to convict on Count One.  The subsequent instruction, which when read as a whole focuses on a different legal point (that the elements of the substantive crimes referenced within the conspiracy charge are not "elements" of the conspiracy itself), does not so undermine the properly articulated conspiracy elements such that: (1) the superseding indictment was constructively amended; (2) counsel was constitutionally deficient for failing to raise a constructive amendment claim; or (3) that Strickland prejudice resulted in a case where Petitioner was separately convicted of substantive wire fraud, thus illustrating the commission of overt acts in furtherance of the charged wire fraud conspiracy.

Petitioner, who is proceeding with habeas counsel, fails to cite any precedent suggesting that an indictment is constructively amended when an element, twice identified to the jury as necessary to find guilt, is omitted in a later instruction that has a different legal focus.  Cf. Moore, 810 F.3d at 936-38 (finding, on that record, that conflicts in the jury instructions did not constructively amend the indictment as the "bulk of the jury instructions" and "the parties' arguments" properly "tracked the indictment").  Therefore, even accepting that trial counsel "should have" sought to correct the inaccuracy in the clarifying

jury instruction at trial,[22] Petitioner still fails to demonstrate that counsel was constitutionally deficient for not doing so, that invoking a theory of "constructive amendment" (then, or on appeal) would be fruitful, or that the end result of trial counsel's failure to identify the omission actually resulted in a "constructive amendment."  Petitioner likewise fails to demonstrate a reasonable probability that the result would have been different if the Court had repeated at trial, for the third time, the requirement that the Government prove an overt act.  See Trial Tr. 854-55 (twice repeating the requirement); ECF No. 87 (finding Petitioner guilty as to conspiracy to commit wire fraud as well as two substantive counts of wire fraud).  Because the "full context" of the record, including the Government's closing argument, in no way suggests that the jury had a "license to convict" on anything other than a § 371 conspiracy that required an overt act finding, Petitioner's hindsight challenge to trial counsel's performance is **DENIED**.[23]

---

[22] See Jackson v. United States, 638 F. Supp. 2d 514, 532-33 (W.D.N.C. 2009) ("To state the obvious: the trial lawyers in every case could have done something more or something different.  So, omissions are inevitable." (quoting Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000))).

[23] Within the constructive amendment section of Petitioner's motion she makes reference to a separate jury instruction that was mistakenly read by the Court.  See Trial Tr. at 858 ("You should judge the testimony of a defendant in the same manner as you judge the testimony of any other witness in this case.").  This instruction was unnecessary because Petitioner elected not to testify at her second trial.  Because she did not testify, the proper instruction (which was provided to the jury) is an instruction indicating that Petitioner had no obligation to testify and that no inferences could be drawn from her decision not to testify.  Id. at 846.  In her § 2255

## D. Tolling Agreement

Petitioner's § 2255 motion concludes with a fourth claim for relief titled "tolling agreement," which consists of a single paragraph again seeking to demonstrate that the limitations waiver is unenforceable.  ECF No. 142, at 18-19.  Such claim, which is defaulted, fails to offer a valid basis for relief, and for reasons previously stated, fails to establish that the Government "waived" its right to rely on the written limitations waiver.  Consistent with the prior analysis herein, such claim is **DISMISSED** as procedurally defaulted and is alternatively **DENIED** on the merits as Petitioner fails to articulate a valid basis for relief under § 2255.

## IV. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion is **DISMISSED** as to all defaulted claims (all claims other than the ineffective assistance claims), and is **DENIED in full on the merits**.  ECF No. 142.

---

motion, Petitioner argues that giving a needless instruction "about invoking the 5th amendment . . . could very well have caused jurors to believe [that Petitioner] was hiding out."  ECF No. 142, at 18.  First, this cursory argument appears misplaced, as instructing the jurors that they were prohibited from making inferences about Petitioner's decision not to testify was necessary and legally accurate.  Second, to the extent Petitioner's one-sentence argument should be interpreted as contending that trial counsel erred by allowing the district court to re-read the proper instruction to the jury, such cursory argument, which seeks to attack counsel's strategic decision of how to best remedy the mistaken instruction, fails to demonstrate constitutionally deficient performance or resulting prejudice.

Finding that the procedural basis for the partial dismissal of Petitioner's § 2255 motion is not debatable, and further finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability is **DENIED.**  28 U.S.C. § 2253(c)(2); see Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, she may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. R. App. P. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a).  If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, she must do so **within sixty (60) days** from the date of this Opinion and Order.  Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ ⟨signature⟩
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 10, 2024

34